**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

**CIVIL CASE NO. 5:14-303-WOB-CJS**

**LORI L. HALSTED**                                                                      **PLAINTIFF**


                                    **ORDER AND**
**v.**                        **REPORT AND RECOMMENDATION**


**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                                **DEFENDANT**

* * * * * * * * * *

Plaintiff Lori L. Halsted brings this action under 42 U.S.C. § 405(g) challenging Defendant

Commissioner's final decision denying her application for benefits under Title XVI of the Social

Security Act.[1]  This matter has been referred to the undersigned for preparation of a Report and

Recommendation under 28 U.S.C. § 636(b)(1)(B).  At issue is whether the Administrative Law

Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits.  After a

thorough review of the administrative record, for the reasons explained below it will be

**recommended** that the Commissioner's Motion for Summary Judgment (R. 19) be **denied,**

Plaintiff's Motion for Summary Judgment (R. 15) be **granted in part,** and the matter be **remanded**

for further proceedings.[2]

---

[1] The right to court review of the Commissioner's final determination of a claim under Title XVI is provided in 42 U.S.C. § 1383(c)(3), which references § 405(g).

[2] In her Reply, Plaintiff has requested telephonic oral argument in this matter.  (R. 20).  Local Rule 83.11(c), which describes judicial review of Social Security cases, provides in relevant part, "At the discretion of the judge to whom the case is assigned, judicial review may occur on written motion or oral argument."  Oral argument is not necessary to determine the pending Motions for Summary Judgment, as the Motions have been thoroughly briefed.  Accordingly, Plaintiff's construed Motion for Oral Argument (R. 20) will also be denied.

I.        STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id.* (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801,

2

803-04 (6th Cir. 2008) (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v.*

*Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  First, a claimant must demonstrate that she

is not currently engaged in "substantial gainful activity."  *Vance*, 260 F. App'x at 803 (*citing*

20 C.F.R. §§ 404.1520(b), 416.920(b)).  Second, if the claimant is not engaged in substantial gainful

activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04.  "A 'severe

impairment' is one which 'significantly limits . . . physical or mental ability to do basic work

activities.'" *Id*. at 804 (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)).  Third, if the claimant is not

performing substantial gainful activity, has a severe impairment that is expected to last for at least

twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part

404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or

work experience.  *Id*.  (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(d)).  Fourth, the claimant is not

disabled if her impairment(s) does not prevent her from doing her past relevant work.  *Id*.  Lastly,

even if the claimant cannot perform her past relevant work, she is not disabled if she can perform

other work that exists in the national economy.  *Id*. (*citing Abbott*, 905 F.2d at 923).  Throughout this

process, the claimant carries the overall burden of establishing that she is disabled, but the

Commissioner bears the burden of establishing that the claimant can perform other work existing

in the national economy.  *Id*.  (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2004)).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's alleged disability began on December 11, 2012, when she was 54 years old.

(Administrative Record (A.R.) 35).  Plaintiff has a high school education and can read and write.

(*Id.* at 38).  Plaintiff has previous work experience as a ward clerk.  (*Id.* at 38-39).  Plaintiff claims

disability based on depression, bipolar disorder, agoraphobia, and suicide attempts (*id.* at 219), as well as osteoporosis and nodules on both lungs (*id.* at 99, 104).

On December 11, 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income.  (*Id.* at 199-206).  These claims were denied initially, and again upon reconsideration.  (*Id.* at 116-123, 127-141).  At Plaintiff's request, a hearing was held before Administrative Law Judge Robert B. Bowling on January 3, 2014.  (*Id.* at 31).  Plaintiff appeared and testified at the hearing, and was represented by Patsy R. Hughes, a non-attorney representative. (*Id.* at 18).  At Plaintiff's request, the ALJ permitted Plaintiff to withdraw her application for disability insurance benefits and amend her alleged disability onset date to December 11, 2012.  (*Id.* at 34-35).  At the hearing, the ALJ also heard testimony from an impartial vocational expert (VE). (*Id.* at 18, 58-61).  After receiving testimony and reviewing the record, the ALJ issued a written decision on January 30, 2014, finding Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at 18-26).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id.* at 19-20).  *See* 20 C.F.R. § 416.920(a).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since December 11, 2012—the alleged onset date of her disability.  (*Id.* at 20).  At step two, the ALJ determined that Plaintiff had the severe impairments of affective disorder and anxiety disorders under 20 C.F.R. § 416.920(c).  (*Id.*).

At step three, the ALJ analyzed Plaintiff's impairments individually and in combination, and found that Plaintiff did not have an impairment that meets or equals the level of severity set forth in any of the Listings of Impairments under the applicable Federal Regulation.  (*Id.* at 21-22).  At step

4

four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels with the following limitations:

> work is limited to simple, routine and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple, work-related decisions and with few, if any, work place changes; claimant should have only occasional interaction with the general public, only occasional interaction with co-workers and only occasional supervision.

(*Id.* at 22).

At the hearing, the ALJ heard testimony from an impartial VE who stated that based on the RFC provided by the ALJ, Plaintiff could not perform her past relevant work as a ward clerk. (*Id.* at 25, 59-60). The ALJ then proceeded to step five, and adopted the VE's opinion that, given the stated RFC, there were other jobs in the national economy that Plaintiff would be able to perform, namely representative occupations such as housekeeping, small products assembly, and surveillance monitor. (*Id.* at 25-26). Accordingly, the ALJ concluded that Plaintiff was not "disabled" for social security purposes. (*Id.*).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council, and on April 17, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's January 30, 2014, decision denying Plaintiff benefits the final decision of the Commissioner. (*Id.* at 4). On July 24, 2014, having exhausted her administrative remedies, Plaintiff timely filed her Complaint asserting the ALJ's decision was contrary to law. (R. 1).[3]

## III.   ANALYSIS

---

[3] Although a claimant has 60 days after the denial of his appeal to file a civil action, here, by letter dated July 17, 2014, the Appeals Council granted Plaintiff's request for an additional 30 days to file her appeal. (A.R. 1). Thus, Plaintiff's Complaint, filed July 24, 2014, is timely.

Plaintiff has filed a Motion for Summary Judgment (R. 16), arguing that the ALJ erred at step two when he failed to find any severe physical impairments and thus did not include any physical limitations in his RFC assessment.  Plaintiff also contends the Commissioner has failed to meet her burden at step 5 of the sequential analysis.  Each of these arguments will be addressed in turn.

### A.   The ALJ did not err at step two in finding Plaintiff had no severe physical impairments.

The second step in the disability evaluation process requires the ALJ to consider the medical severity of the claimant's impairments.  20 C.F.R. § 416.920(a)(4)(ii); Soc. Sec. Rul. (SSR) 96-3p, 1996 WL 374181, at *1 (July 2, 1996).  A severe impairment is one that "significantly limits an individual's physical or mental ability to perform basic work activities."  20 C.F.R. § 416.921(b).  Basic work activities, defined as "those abilities and aptitudes necessary to do most jobs," include the following: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for hearing, seeing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.*  Additionally, the claimant's impairments must have lasted or be expected to last for a continuous twelve month period, unless the condition is expected to result in death.  20 C.F.R. § 416.920; 20 C.F.R. § 416.909.

Because the Sixth Circuit has interpreted "the step two severity regulation as a '*de minimis* hurdle' in the disability determination process," meant to screen out totally frivolous claims, the severity of the impairment is "liberally construed in favor of the claimant" at this step in the analysis. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425,

6

428 (6th Cir. 2007). Thus, Plaintiff is not required to establish total disability at this step of the sequential evaluation. Rather, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862 (*citing Farris*, 773 F.2d at 90).

If, however, the ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives the step two screening process. 20 C.F.R. § 416.920(a)(4). Because the regulations instruct the ALJ to consider both severe and nonsevere impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "nonsevere" will not be ignored altogether. 20 C.F.R. § 416.945(a)(2). For this reason, the Sixth Circuit has consistently held that an ALJ does not commit reversible error when he decides that some of the claimant's impairments are not severe, but finds that other impairments are severe and proceeds with his analysis. *Maziarz v. Sec'y of Health & Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987). As long as "an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two 'does not constitute reversible error.'" *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007) (*quoting Maziarz*, 837 F.2d at 244). Thus, because the ALJ found Plaintiff had severe mental impairments at step two, any error in his finding that Plaintiff's physical impairments were not severe is harmless as long as the ALJ considered those impairments in his analysis of the remaining steps.

Here, the ALJ's decision demonstrates he did consider Plaintiff's physical impairments at the remaining steps. The ALJ first considered evidence of Plaintiff's physical impairments at step two. The ALJ noted that Plaintiff had "disorders of the joints and emphysema," but concluded that these conditions were not severe because "they cause[d] no more than minimal limitation in ability

to perform basic work-related activities." (A.R. 20).  The ALJ also considered medical evidence of record related to Plaintiff's left bimalleolar ankle fracture, status post open reduction internal fixation in October 2012. (*Id.*). The ALJ noted the evidence showed the impairment had resolved durationally to less than "severe" impairment, with no functionally limiting aftereffects.  (*Id.* at 20-21).

The ALJ also considered evidence of Plaintiff's nonsevere impairments at step four in his assessment of Plaintiff's RFC.  The ALJ noted treatment records from Plaintiff's primary care physician showed conservative treatment for cough, tobacco abuse, emphysema, osteoporosis, asymptomatic hyponatremia, left foot pain, and cysts on the left elbow and jaw/neck.  The ALJ concluded that these conditions had all been managed medically.  (A.R. 22).  The ALJ also considered the report of consultative examiner Dr. Owen.  (*Id.* at 22-23).  Dr. Owen diagnosed Plaintiff with osteoporosis and chronic obstructive pulmonary disease, and while clinical findings were largely unremarkable, there was some diminution in lumbar spine range of motion.  (*Id.* at 23 n.8).  Because the ALJ considered these impairments when determining Plaintiff's RFC, the fact that some of Plaintiff's impairments were not deemed severe at step two is "legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (*citing Maziarz*, 837 F.2d at 244).  Thus, the ALJ did not commit reversible error in failing to find severe physical impairments at step two.

### B.    The ALJ's RFC assessment is not supported by substantial evidence.

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because it fails to include physical limitations that the ALJ found to be credible.  (R. 16, at 6).  Plaintiff explains the RFC failed to include any physical limitations assessed by consultative examiner Dr. Owen or by state agency consultant Dr. Reed, whose opinions regarding physical limitations were given "great weight" by the ALJ.  (*Id.*).

8

An RFC assessment is an "'assessment of [the Plaintiff's] remaining capacity for work' once her limitations have been taken into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (*citing* 20 C.F.R. § 916.945). It is an assessment of what Plaintiff can and cannot do, not what she does and does not suffer from. *Id.* In rendering this assessment, the ALJ must consider all medically determinable impairments, both severe and nonsevere, and take into account all relevant medical and other evidence. 20 C.F.R. § 416.945(a)(2)-(3). Failure to include medically evidenced impairments in an RFC calculation suggests that the ALJ's finding is not supported by substantial evidence. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009).

In his assessment of Plaintiff's RFC, the ALJ stated: "All of the other physicians' opinions regarding physical limitations are given great weight." (A.R. 24). Plaintiff explains that the ALJ's statement was an explicit adoption of the physical limitations opined by consultative examiner Dr. Owen and reviewing state agency physician Dr. Reed. Thus, Plaintiff concludes that the ALJ erred in finding Plaintiff capable of performing a full range of work at all exertional levels, because this conclusion did not account for any of Plaintiff's physical limitations. (R. 16, at 6).

The Commissioner argues that the ALJ's failure to include physical limitations in Plaintiff's RFC was not in error, because the ALJ provided a legitimate reason for discounting Dr. Owen's and Dr. Reed's opinions regarding Plaintiff's physical limitations. (R. 19, at 8). The Commissioner refers to pages 20-21 of the ALJ's decision, noting "the ALJ reasonably explained that the evidence of record did not support any significant physical functional limitations due to Plaintiff's ankle injury or emphysema." (*Id.*). Thus, the Commissioner concludes that the ALJ properly discounted Dr. Owen and Dr. Reed's opinions as inconsistent with the objective medical evidence and the evidence of record as a whole. (*Id.* at 8-9). However, pages 20-21 of the decision relate to the ALJ's step two

9

analysis in which he summarized medical evidence of Plaintiff's physical impairments and ultimately concluded that these impairments were not "severe." (A.R. 20-21). Notably, the ALJ did not discuss the opinions of Dr. Owen or Dr. Reed in this portion of his decision.

More importantly, the Commissioner's argument altogether ignores the ALJ's explicit finding that the "physicians' opinions regarding physical limitations are given great weight." (*Id.* at 24). Only two physicians of record offered opinions as to Plaintiff's physical limitations. In September 2013, Plaintiff was examined by consultative examiner Dr. Owen. (*Id.* at 387-90). Dr. Owen diagnosed Plaintiff with osteoporosis and chronic obstructive pulmonary disease, and opined that she would have moderate difficulty lifting, handling, and carrying objects. (*Id.*).

Plaintiff's records were also reviewed by state agency physician Dr. Reed. (*Id.* at 107-08). As part of this review, Dr. Reed considered the report of consultative examiner Dr. Owen. Upon review of the report, Dr. Reed found, "Dr. Owen's opinion is consistent with the total evidence and assigned great weight." (*Id.* at 107). Dr. Reed also opined that Plaintiff was limited to occasionally lifting and or carrying 50 pounds per day, and could frequently lift or carry 25 pounds. He further opined that Plaintiff was able to walk, stand, or sit for six hours in an eight-hour day. Due to Plaintiff's history of ankle problems, he indicated she could only occasionally climb ladders, ropes, or scaffolds. (*Id.*). The ALJ considered these findings, and found that his RFC assessment was "further supported by the opinions of the State agency medical consultants." (*Id.* at 24).

In a footnote to his statement assigning "great weight" to the physicians' opinions regarding physical limitations, the ALJ qualified his treatment of Dr. Owen's opinions: "The somewhat nonspecific functional capacity assessment of the consultative examining physician is found to be probative insofar as it is commensurate with the residual functional capacity defined [above]." (*Id.*

10

at 24 n.11).  Thus, it appears the ALJ found all of the physicians' opinions regarding physical limitations were entitled to great weight *except* for the opinions of Dr. Owen, which were probative to the extent they were consistent with the ALJ's RFC assessment.  However, as noted above, only two physicians of record offered opinions of Plaintiff's physical limitations.  The ALJ's qualifying statement leaves only Dr. Reed's opinions entitled to great weight–a result inconsistent with the ALJ's decision to give "great weight" to "all of the other physicians' opinions regarding physical limitations." (*Id.* at 24).  The footnote is also internally inconsistent with the ALJ's decision to give great weight to Dr. Reed's opinions, because Dr. Reed's opinions were consistent with Dr. Owen's. Indeed, Dr. Reed reviewed Dr. Owen's report and found it consistent with the total evidence of record. (*Id.* at 107).  Accordingly, the ALJ's unsupported footnote, which contradicts the ALJ's own findings and is not supported by other evidence of record, fails to provide an evidentiary basis for the ALJ's failure to include Plaintiff's physical limitations in the RFC assessment.

Even assuming the ALJ did not intend to give "great weight" to the opinions of Dr. Owens, the fact remains that the ALJ explicitly found Dr. Reed's opinions regarding Plaintiff's physical limitations were entitled to "great weight." (*Id.* at 24).  However, the ALJ's RFC assessment fails to include any physical limitations, contrary to his own findings.  The ALJ's failure to include physical limitations he found credible in the RFC assessment indicates that the RFC does not accurately reflect Plaintiff's ability to work and is thus not supported by substantial evidence.  *See Howard*, 276 F.3d at 241.

### C.    The ALJ's conclusion at step five is not supported by substantial evidence.

The Commissioner contends that even if the ALJ erred in his failure to include physical limitations in his RFC assessment, this error was harmless. (R. 19, at 9).  The Commissioner

11

explains that even if the ALJ had included these physical limitations in his RFC and hypothetical question, these limitations–which the Commissioner contends are consistent with a range of medium work–would not preclude Plaintiff from performing the three representative jobs identified by the VE. (*Id.*).

"[F]or a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy*, 594 F.3d at 516. In a hypothetical question, an ALJ is required to incorporate only those limitations he finds credible and supported by the record. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). However, "the ALJ must include in the question an accurate calculation of the claimant's residual functional capacity–i.e., a description of what the claimant can and cannot do." *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) (quotations omitted).

At the administrative hearing, the ALJ posed a question to the VE describing a hypothetical person of Plaintiff's age and educational level, with the same RFC as the ALJ ultimately determined Plaintiff had the ability to perform. (A.R. 59-60). In response to this hypothetical, the VE testified that a person with such limitations would be able to perform jobs in the national economy, namely the representative jobs of housekeeper (medium unskilled); small products assembly (light unskilled); and surveillance monitor (sedentary unskilled). (*Id.* at 60). Because the RFC fails to accurately describe Plaintiff's abilities, and the hypothetical question incorporated the inaccurate RFC determination, the hypothetical question suffers from the same defects. The ALJ's hypothetical omitted Plaintiff's physical limitations–limitations which the ALJ found were entitled to "great

weight." This constitutes error. *See Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

The Commissioner contends that any error was harmless on the grounds that even when Plaintiff's physical limitations are considered, she is still capable of performing each of the representative jobs identified by the VE.  (R. 19, at 9).  In support of her harmless error argument, the Commissioner relies on a case from within this district.  In *Bennett v. Colvin*, the ALJ accepted the opinion of a consultative examiner that the claimant "had the ability to understand and remember simple instructions."  *Bennett v. Colvin*, No. 14-163-DCR, 2015 WL 574631, at *5 (E.D. Ky. Feb. 11, 2015).  But the claimant's RFC and the hypothetical question posed to the VE failed to include these limitations.  The court determined the ALJ's failure to include the limitations constituted harmless error because the representative occupations identified by the VE in response to the hypothetical question accounted for the omitted limitations. *Id.* at *6.  The VE had opined that a hypothetical person with claimant's RFC would be limited to medium unskilled work.  The court explained that the ability to hear and understand simple instructions is all that is required to do unskilled work, and therefore the ALJ's failure to include a limitation of "simple instructions" in the hypothetical question posed to the VE was harmless error.  *Id.* at **6-7.

*Bennett,* however, is distinguishable from the present case.  While the unskilled occupations identified by the VE in *Bennett* accounted for the omitted limitations, here it is unclear whether the representative occupations identified by the VE account for Plaintiff's physical limitations.  The Commissioner maintains that the opinions of Dr. Owen and Dr. Reed are consistent with a range of medium work.  Thus, because the VE identified three representative jobs at an exertional level of

13

medium work or less, there is substantial evidence to support the ALJ's conclusion that Plaintiff is capable of performing each occupation identified.  (R. 19, at 9).

     "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary or light work."  20 C.F.R. § 416.967(c).  Here, although Dr. Reed's opinion that Plaintiff is limited to occasionally lifting 50 pounds and frequently lifting or carrying 25 pounds is consistent with the definition of medium work, his opinion that Plaintiff should only occasionally climb ladders, ropes, or scaffolds represents an additional exertional limitation.  Similarly, Dr. Owen's opinion that Plaintiff has moderate limitations in lifting, handling, and carrying objects is an exertional limitation not accounted for in the definition of "medium work."

     The Sixth Circuit has found that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, *but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.*'"  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (emphasis added).  In this case, "we cannot assume that the vocational expert would have answered in a similar manner had the ALJ instructed [her] properly."  *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007) (quotation omitted).  The factual assumptions underlying the ALJ's hypothetical question required the VE to assume that Plaintiff had no physical restrictions.  "The hypothetical question [ ] fails to describe accurately [Plaintiff's] physical and mental impairments; a defect which . . . is fatal to the [vocational expert's] testimony and the ALJ's reliance upon it."  *Id.* (*quoting Howard*, 276 F.3d at 241).  If the hypothetical question does not accurately portray Plaintiff's physical and mental state,

the vocational expert's testimony in response to the hypothetical question may not serve as substantial evidence in support of the ALJ's finding that Plaintiff could perform other work.

Here, the ALJ gave "great weight" to the physicians' opinions regarding physical limitations but failed to account for these limitations in either his RFC assessment or in his hypothetical question to the VE.  In light of the complete absence of any physical restrictions in the RFC and the hypothetical posed to the VE, and because the burden shifts to the Commissioner at step five, the ALJ's error was not harmless and the ALJ's step five determination cannot be said to be supported by substantial evidence.

### D.    Plaintiff's remaining arguments lack merit.

Plaintiff devotes substantial portions of her brief and reply to arguing that the ALJ committed additional errors in his disability determination.  Although the Court has determined this matter should be remanded for the reasons set forth above, the undersigned will also briefly address Plaintiff's remaining arguments so as to provide guidance on remand.

#### 1.    Applicability of the grids.

Plaintiff argues the Commissioner cannot rely on her ability to perform the representative unskilled light and sedentary jobs identified by the VE to satisfy her step five burden.  Plaintiff explains that under the Medical-Vocational guidelines of 20 C.F.R. Part 404, Subpart P, Appendix 2 ("grids"), an individual of Plaintiff's age, education, and work experience who is capable of a full range of light work is disabled as a matter of law.  (R. 16, at 8).

The grids are used when the claimant cannot perform any past relevant work, with consideration being given to the claimant's RFC, age, education, and past work experience to determine whether the individual can perform other work which exists in significant numbers in the

15

national economy.  *See* 20 C.F.R. § 416.920(f).  For a grid rule to apply, each of a claimant's individual circumstances with respect to their RFC, age, education, and work experience must coincide with the criteria for the corresponding factor in the rule.  20 C.F.R. Subpart P, Appendix 2, § 200.00(a).

Here, Plaintiff explains that because she turned 55 as of April 12, 2013, she is a person of "advanced age" under the grid rules.  (R. 16, at 8).  Plaintiff also notes that she has a high school education and a history of unskilled work.  Plaintiff explains that a person of advanced age with a high school education and history of unskilled work who is limited to light work is disabled as a matter of law under grid Rule 202.06.  (*Id.*).  Thus, Plaintiff concludes that the Commissioner cannot rely on the unskilled light and sedentary jobs identified by the VE, because under the grid a person with her same circumstances who is capable of performing light work is disabled as a matter of law. (*Id.*).

Plaintiff's argument is misguided.  The applicability of a grid rule is premised upon a claimant's individual circumstances coinciding with the corresponding factor in the rule.  "Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case." 20 C.F.R. Part 404 Subpart P Appendix 2, § 200.00(a).  Thus, for Rule 202.06 to apply, Plaintiff would have to be limited to performing only a range of light work.  Here, the ALJ found Plaintiff was capable of a full range of work at all exertional levels.  (A.R. 22).

Plaintiff argues at length on this point, contending that the grid rules for light work presuppose an ability to perform every single unskilled light and sedentary job in the nation.  (R. 20, at 4).  Although her contention is true, she misses the larger point: the grid rules for light work presuppose an ability to perform *no more than* every single unskilled light and sedentary job in the

16

nation.  Plaintiff is presumed able to perform light work because the ALJ found her capable of performing "a full range of work at all exertional levels."  (A.R. 22); *see also* 20 C.F.R. § 416.967 (describing classification of jobs as sedentary, light, medium, heavy, and very heavy).  Because the ALJ specifically found that Plaintiff had the ability to perform a range of work–including, but not limited to light work–the light work grid is not directly applicable.  *See Madden v. Comm'r of Soc. Sec.*, 81 F.3d 160 (table decision), 1996 WL 148615, at *2 (6th Cir. 1996).  Accordingly, Plaintiff's argument that she is entitled to a finding of disability under grid Rule 202.06 is without merit.

### 2.      The ALJ's reliance on the VE's testimony.

Plaintiff also contends that the ALJ improperly relied on the VE's testimony because the VE gave testimony that was in conflict with the Dictionary of Occupational Titles (DOT).  (R. 16, at 8-9; R. 20, at 5-6).  At Plaintiff's hearing, when asked by the ALJ if there were any examples of medium jobs a person of Plaintiff's age, education, past work experience, and RFC could perform in the national economy, the VE identified "housekeeping," DOT code 323.687-018.  (A.R. 60).  Plaintiff complains that the DOT code identified by the VE refers to "housecleaner," which is classified by the DOT as a heavy job.  (R. 16, at 8).

At step five of the disability analysis, the burden shifts to the Commissioner to establish that the claimant can perform other work existing in the national economy.  *Vance*, 260 F. App'x at 804. To meet this burden, the ALJ may rely on the testimony of an impartial VE regarding job information found in the DOT.  *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  After a VE testifies, the ALJ has an affirmative duty to ask the VE whether her testimony conflicts with the information found in the DOT.  *Id.*; *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009).  If the VE's testimony appears to conflict with the DOT, the ALJ "must elicit a reasonable

17

explanation for the conflict before relying on the VE." SSR 00-4p. The ALJ must then determine if the explanation given by the VE is "reasonable and provides a basis for relying on the VE." *Id.*

As explained above, during the administrative hearing the ALJ posed a hypothetical question to the VE that failed to accurately describe Plaintiff's functional limitations, and asked if such a person could perform any of Plaintiff's past work. (A.R. 59-60). The VE testified that such a person could not. (*Id.* at 60). The ALJ then asked if such a person could perform other work in the national economy, and if so, to provide an example of a medium, light, and sedentary job that such a person could perform. (*Id.*). In response, the VE testified that a person with the limitations identified by the ALJ could perform the job of "housekeeper," which she identified as a job at the medium exertional level. (*Id.*). Consistent with the SSR 00-4p, the ALJ asked the VE whether her testimony was consistent with the DOT. (*Id.* at 61). The VE testified that is was. (*Id.*). This inquiry effectively satisfied the Commissioner's burden. *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013).

"The ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. This obligation falls to plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009). Here, Plaintiff attended her hearing and was represented by Patsy R. Hughes. (A.R. 18). Ms. Hughes had the opportunity to cross-examine the VE, but failed to address the alleged inconsistencies in her testimony, of which Plaintiff now complains. (*Id.* at 60-62). "[N]othing in the applicable Social Security regulations requires the ALJ to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the [ALJ]."

*Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008).  Because Plaintiff failed to bring the alleged conflict to the attention of the ALJ, the ALJ was not required to inquire further into whether the VE's testimony was correct.

As set forth above, the ALJ failed to present the VE with an accurate description of claimant's limitations, and thus was not entitled to rely on the expert's testimony to meet his burden at step five.  However, Plaintiff's suggestion on appeal to this Court that the ALJ violated the requirements of SSR 00-4p is without merit.

## IV.    CONCLUSION

As explained above, the ALJ's failure to account for Plaintiff's physical limitations in the RFC assessment and hypothetical question posed to the VE necessitates remand.  Accordingly,

**IT IS ORDERED** that Plaintiff's construed Motion for Oral Argument (R. 20) is **denied.**

**IT IS RECOMMENDED** that:

1.     The Commissioner's decision be found not to be supported by substantial evidence and therefore **reversed**;

2.     Plaintiff's Motion for Summary Judgment (R. 15) be **granted in part** as to Plaintiff's request for reversal of the Commissioner's decision, and **denied in part** as to Plaintiff's request for a court-ordered award of benefits;

3.     Defendant's Motion for Summary Judgment (R. 19) be **denied**; and,

4.     Judgment be entered **reversing** the Commissioner's Decision and **remanding** the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to reassess Plaintiff's residual functional capacity as it pertains to her physical limitations.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Dated this 28th day of August, 2015.



**Signed By:**

*<u>Candace J. Smith</u>*

**United States Magistrate Judge**

G:\DATA\social security\14-303 Halsted R&R.ad.final.wpd